Kevin, since I'm not on the video, would you mind teeing up and introducing the next case? Yeah, of course. So can we get the lawyers in for the last case of the day? Omnipol v. Worrell This is number 19-14597 I see Mr. Schultz on the line. Mr. Lyman on the line. This is Brian Calciano. I'm getting the message that I cannot start my video because the host has stopped it. Uh-oh. So either Jerome or Anthony, can we help Mr. Kelsey? Okay. Try it now, Mr. Kelsey. There we go. Mr. Calciano is on. Good. Thank you very much. Mr. Schultz, Mr. Lyman, Mr. Calciano, welcome. As I think you may know, Judge Jordan's internet connection was lost, so you'll see Judge Choklat and me. You will not see Judge Jordan, but he is there in a black box, and you'll hear his disembodied voice from time to time. Okay. If the appellant is ready to proceed, go ahead. Good morning, Your Honors. May it please the Court, my name is Dallas Sapir, and I'm here representing the appellants Omnipol and Elmex Praha, collectively Omnipol. Your Honors, we are here today to ask this Court to reverse and remand the District Court's grant of summary judgment in favor of the appellees on three bases. First, that the District Court erred in failing to use the bailing standard for granting discovery to the plaintiff and challenging the Attorney General's Westfall Act certification, and erred in finding that the federal employees were acting within the scope of their employment under Florida law. A second reason, Your Honor, we're asking that this Court reverse and remand is that the District Court erred in finding that the claims against the federal employees were barred by the FTCA and by failure to exhaust as the United States had been improperly substituted as the defendant. And the final reason, Your Honors, the District Court erred in finding that the complaint failed to state sufficient facts to satisfy the Rule 9b pleading standard in fraud. Before I read a prepared statement, Your Honors, I'm more than happy to answer any questions or concerns the Court has in ruling in favor of my client. Well, I guess maybe I'll kick it off to avoid the prepared statement. So on the Westfall Act certification and the discovery, tell me how it is that the standards, everybody seems to assume that the standards here are competing standards, that there are two different standards between which we must choose. I don't really think I understand that. It seems that the two standards are really just, in effect, saying the same thing, you know, whether or not the evidence gives rise to a genuine issue of material fact. Why are there competing standards? Yes, Your Honor, and this is, of course, a issue of first impression in the 11th Circuit, it appears, and one that has not been ruled on by the majority of circuits as we sit today. But the Third Circuit and the District Court Circuit requires that the plaintiff allege sufficient facts to create a factual dispute as to whether the picking is true. Of course, that would rise a factual question as to whether or not the defendant and federal employees were operating within the scope of their employment. The Fourth Circuit, which has the competing standard, Your Honor, requires that the plaintiffs forecast specific evidence or have specific evidence demonstrating that the federal employees were not operating within the scope of their employment. There is, and to a certain extent that the Court is correct, they are somewhat parallel, but there is a slight distinction in the level of specificity to which the plaintiffs must come forward with an assertion of what they're going to have in facts that, I'm sorry, in evidence that they will find. And I think the Fourth Circuit is trying to limit the idea that the plaintiff will get months and months of unlimited discovery to prove that issue up front, what is meant to be a block of long-term litigation against the federal government. And I think this is an actual case where we can harmonize the two because the plaintiff did come forward with specific areas of discovery that it wanted to go into. The nature of the contracts, the nature of the certification, the standard for determining that the AG was going to certify the federal employees, the nature of the communications in place between the federal defendant employees and the non-federal employees. So the issue is that the requirement that the plaintiff be able to tell you exactly what evidence is going to exist puts a very strict burden on the plaintiff to know what exists within the federal government's hands that can prove that. And the plaintiff just can't necessarily do that. But the plaintiff is not trying to get to wide open discovery in this area. He is forecasting specific areas he's going to investigate in discovery to prove that the federal employees are acting outside of their employment when he has alleged facts that state on their face, per se, under Florida law, that federal defendants were acting outside of the scope of their employment. Go ahead, Judge Jordan. I'm sorry. I'm sorry, Mr. Velapeer. Let me ask you this. I understand what the federal employees were alleged to have done wrong with regard to the initial aspect of the dealings with Purple Shovel. But what did they do wrong with regards to this almost $3 million contract the second time around, aside from negotiating and contracting with an entity that had its license revoked? Yes, Your Honor. The key part of it does start with the negotiating and issuing of a federal contract to an ineligible party, that is Purple Shovel. The part that they did wrong, Your Honor, was they participated in and they received the monies from DFAS, that's the Department of Defense Payment Center, that was paid from DFAS to Purple Shovel for the completion of that contract. That Purple Shovel and the employees that are the defendants here, it's the only person who can act on behalf of Purple Shovel, winning, took those funds out of Purple Shovel, transferred them into their own... Stop for a second. Stop for a second. Tell me about how the money flow is supposed to work. If this contract were everything was okay and there were no improprieties, who would pay Purple Shovel? Certainly not the civilian employees. It would be the Department of Defense or SOUTHCOM, right? So, Your Honor, let me break that down for you. That's a very good point and I apologize I didn't make that clear. The flow of funds, if the contract had been fully executed and not been interfered with, would have been, once Omnipol completes the contract and delivers the arms and armament request under the specified contract, SOUTHCOM receives confirmation of that, DFAS, which is the Department of Defense's basically accounting office that would issue the payment, issues payment to Purple Shovel, the contractor. Purple Shovel then issues payment to Omnipol, the subcontractor, Omnipol and LMAX, Your Honor. And it is once DFAS issued it to Purple Shovel that the funds were diverted by the defendants in this case for their own use. Okay, so the federal employees had no role in the money going from DFAS to Purple Shovel, right? No, Your Honor. Once the contract was issued and the plaintiff's Omnipol had been induced into that contract, DFAS took care of that particular transfer in accordance with the issued contract. Okay, so your claim is that after the money was sent to Purple Shovel by DFAS, then the federal employee defendants and the other defendants then engaged in a scheme to divide those funds among themselves and not pay Omnipol and LMAX, right? Yes, Your Honor. Once they had obtained the signed contract with Purple Shovel and eventually Omnipol, yes, Your Honor, the funds were transferred from DFAS and diverted by Worrell, Brecht and the federal employee defendants at that point. And they gave money to the federal, according to your complaint, they gave money to the federal employee defendants? In the first instance, Your Honor, there was a kickback received by the federal employees and in the $3 million transaction, they took a share of the $3 million. That is what is alleged in the complaint, Your Honor. Okay. All right, thank you. Go ahead, Judge Newsom. Mr. Lupierre, let me just ask you one question. Earlier, you had sort of run through relatively quickly and my mind just wasn't quite tracking the categories of discovery that you wanted. And I guess I might have misread the record, but I thought that I had read that in the request for discovery, you had requested three buckets of sort of topics. One about whether the Czech Republic had been blacklisted, one about whether the procedures the government was using to determine how the federal employees acted within or without the scope, and one, Strother's pre-existing relationship with Worrell and Brecht. So, how is it, especially I guess on an abuse of discretion standard that we would conclude that any of those go to the guts of the merits of the question, whether the, you know, the employees were acting within or without the scope of their employment? Of course, Your Honor, and I'll take this one at a time. The issue of whether or not the Czech Republic had been blacklisted is that goes to some allegations and evidence related to the fact that the federal employees or one of the federal employee defendants had alleged at one point that the Czech Republic, meaning our clients, were ineligible for federal contracts in order to prevent them from removing from this one and seeking other contracts. And so, if they're participating to that extent in the fraud, obviously they are clearly operating outside the scope of the employment relationship with the federal government. The second issue, Your Honor, related to how the AG determined whether or not the employees were acting within the scope of employment deals with the fact that the AG's Westfall Act certification in this case doesn't really give any reasoning for determining that they are within the scope of the employment. So, if we understand how they made that decision, obviously we can better address the issues at hand. And then the scope of the relationship between the federal employees and the non-federal employee defendants will address specifically the participation of, and I apologize, Your Honor, I am out of time. No, you can finish up. Please finish up. And then the third bucket relating to the relationship between the federal employees and non-federal employees really goes to participation, long-term participation in the scheme to defraud initially the U.S. government and eventually the subcontractors and the communications they would have had outside of their employment that would have supported those particular allegations as well, Your Honor. Very well. Thank you very much. Thank you, Your Honor. And with my time up, if you have no further questions, I will relinquish the floor. Super. Thank you very much. Thank you, Your Honor. I'll confess that I don't have the minute sheet in front of me, not having expected it. Judge Newsom, Mr. Calciano for Mr. Worrell has three minutes. Mr. Lyman for Mr. Breck has three minutes and Mr. Schultz for Mr. Seidel has nine minutes. OK. Good morning, Your Honors. May it please the court. Brian Calciano appearing for Apple, Mr. Christopher Worrell. And I point out Christopher Worrell because the complaint also mentions a Benjamin Worrell, who actually is an owner of Purple Shovel. My client, Christopher Worrell, is not an owner of Purple Shovel, never was, was assigned there as an employee. And we look at this as a textbook case of why we have the heightened pleading standards of 9B. And our brief cites the policies as articulated by this very court about why that is. But this is essentially and I choose these words carefully and I don't use them lightly. But this is a strike suit designed to intimidate three government contracting officers, an employee of Purple Shovel, two owners of Purple Shovel. And you also have these three parties that were dropped after the initial complaint, multinational defense services and the scientists. As Justice Jordan pointed out earlier, because of Twombly and Iqbal, we don't look at these complaints divorced from from common sense. Right. We have a plausibility standard. And when you really look at what this amended complaint is alleging, it's completely off the reservation. I mean, it's alleging all these individuals participated in what is frankly a completely implausible and fanciful scheme to defraud the plaintiff appellants out of, you know, the exact amount of money that they've claimed against Purple Shovel in a bankruptcy proof of claim. Essentially, this is they got burned by Purple Shovel and they're attempting to hold all these other individuals liable and extract settlements out of them. You say that it's implausible, but and you may be right that the complaint fails to satisfy Rule 9H's heightened splitting requirements. But it's not it's not inconceivable as a matter of common sense that employees of one company steal or divert money that's supposed to go to a subcontractor. That's not crazy. It can happen. And I'm sure it has happened in the past. Absolutely. And as the court noted or I'm sorry, as the appellant noted, I want to correct something that the appellant said, you know, point out this is summary judgment. Obviously, we're here on a motion to dismiss. The standard is of abuse of discretion. And as the district court noted in page 56 of its order, the as far as the money and where the money went and who knew where the money went, that didn't even meet the standard of Rule 8. So even if one throws out 9B and fraud and all that, there haven't even been sufficient allegations about that. And notably, the appellants aren't even asking to be able to to have leave to file an amended complaint to clarify these things. They haven't asked that once in this brief. They're seeking to just let this complaint pass muster on its own and proceed with discovery. And the authorities from this court warning what happens when you when you allow that are well cited in our brief. As expired. You can wrap up. Well, that's there's a lot I have to say about this, Your Honor, but not in the wrap up time, but I will just rest on our briefs. And, you know, we do believe this is a strike suit. And we stand by the district court's well reasoned and lengthy opinion explaining why this is not meeting the pleading standards. Mr. Calciano, thank you very much. Mr. Lyman, you have three minutes. Good morning. May it please the court. My name is Chance Lyman. I'm representing the appellee, James Breck. I know my time is short, so I will be brief. The only real point I have is that the amended complaint does not satisfy rule nines core purpose, which is to give Mr. Breck notice of precisely what he did, if anything, to injure appellants here. And to that end, I just want to point out a few important distinctions that are applicable to Mr. Breck. His situation is unique because there is not one allegation specific to him, except for the jurisdictional allegation reciting that he was an executive officer of Purple Shovel. There is no allegation that Mr. Breck made a statement written or otherwise, let alone a misrepresentation. So there's obviously no allegation that any plaintiff relied on any statement from Mr. Breck. On the contrary, the only statements identified in the complaint are attributed to other actors. That's seen in paragraphs 59 through 61, where the plaintiffs lay out the alleged fraudulent representations presented by the quote association, none of which are attributed to Mr. Breck. His situation is also unique because unlike other co-defendants and non parties, there's no allegation that Mr. Breck knew federal federal defendants prior to engaging in any alleged scheme. And finally, contrary to a point in appellants briefing, there is no allegation that Mr. Breck founded or is a founding member of Purple Shovel. There is an allegation that non party Benjamin Worrell is alleged to be the principal and managing member of that entity. Breck is alleged to be an officer. The appellants appear to rely on two supposed exceptions to the rule nine particularity standard. That is that they only need to allege some information for some claims. And the other one being that they can relax the standard if the defendants control the facts necessary to state the claim. Neither of those exceptions applies to Mr. Breck specifically because they have no information for any claims against Mr. Breck. And second, there are no allegations that Mr. Breck somehow has control of anything that the appellants need to state a claim. In short, there is no standard that can substitute for the requirement to tell Mr. Breck how he has specifically misled the appellants so that he can prepare a defense. And if the if your honors have no further questions, I will yield the remainder of my time. Mr. Lyman, thank you. Mr. Schultz, you have nine minutes. Thank you, Your Honor. Benjamin Schultz on behalf of the federal defendants, Amy Struther, Brian Seidel, Kirk Bristol and the United States. The district court in this case correctly dismissed the complaint for two reasons. First, as to the state law claims against the individual federal employees, the district court recognized that there was a valid Westfall Act certification and that the plaintiffs had introduced no evidence to overturn that certification. To the extent that the plaintiffs contended that they were entitled to discovery and attempt to produce evidence that would overturn that certification. The district court, first of all, recognized correctly that the allegations in the complaint themselves did not establish conduct outside the scope of employment. And that in any event, even if the allegations did suggest conduct outside the scope of employment, the plaintiffs did not give any specific articulations of the kind of discovery that they would like. And to just pick up a little bit on, I think, Judge. Mr. Schultz, let me ask you a question. And again, for purposes of my question, assume that there are no Rule 9 or 12B6 problems with the complaint. If an allegation is that a federal employee diverted funds, stole funds that were destined to another party, how can that be within the scope of federal employment? Sure. So, Your Honor, I think what Your Honor is getting at is the theft claim specifically because I think that's of the state law claims, the ones that is most about the diversion. Most of the other state law claims are not about the diversion, but specifically about the diversion. I think the reason why that one is still within the scope of employment is because it's not a theft in and of its own. But the allegations are that there was a broader scheme that included the theft, and that scheme also included the federal employees doing things within the scope of their employment, like approving the contract with Purple Shovel. And since that contract was at least partially motivated by the federal employee's intent to serve their employer, as the complaint itself alleges, these were quality arms, and so they serve the government's defense interest. Looking at that broader scheme, there was that scope of employment. But, Your Honor, even if you thought that you could… That doesn't get to the alleged stealing and diversion of the money at the end because that cannot possibly have any purpose to benefit the employer if it's true. Well, Your Honor, again, I think you have to look at what the specific claim is. If the claim is just – I think it's not a claim of just unadorned theft. It's a claim that there was this broader scheme. And I think part of the reason why you can see it is that it's not the federal defendants themselves who are alleged to have taken the money out of Purple Shuttle and said there's some really vague allegation that somewhere along the way, the money went from Purple Shovel to some unnamed co-conspirator. And somehow, through this vague conspiracy, ended up in the – or at least partially in the hands of the federal defendants. So that's how you know that it's not an action of diversion alone, but instead some sort of broader conspiracy or broader scheme. And that scheme included the federal defendants approving the contracts with Purple Shuttle or allegedly approving the contracts with Purple Shuttle. And so that's why you have actions within scope. But, Your Honor, even if you – I'm sorry. If the argument is that sophisticated on your side for the theft part of it, why aren't they entitled to some discovery at least after that portion of their claim? Well, Your Honor, the reason they're not entitled to discovery is because of the procedures that they chose to follow. So the way this works is once the government files its certification, that certification under the Westfall Act is prima facie evidence. It has legal effect. The United States, as a matter of law, is substituted as the defendant. Now, it is true that the plaintiffs are entitled to overturn that certification. But to do so under the Supreme Court precedent, what they have to do is they don't just have to give allegations that the certification is wrong. That doesn't overturn it. They have to provide evidence. Now, if they want to say, hey, we don't have that evidence yet, but we think we can get that evidence and discovery, then just like any other litigant could file a Rule 56 demotion or otherwise provide specific indications of discovery they want to get, they are free to articulate that. And then we would be up here on abusive discretion for whether or not the district court's denial of that discovery was an abuse of discretion. But I think it's really telling that never once did they say, hey, we want to take discovery about this diversion portion of it. Instead, the things that they listed that they wanted to take discovery on were other aspects of the case. And so at that point, you have a certification that has legal effect. You have no request for discovery about the diversion portion, let alone a specific request for discovery of the diversion portion. So the district court did not abuse its discretion in denying discovery, and that certification that has legal effect continues in the United States as a defendant. Thank you. So I'd be happy to address anything more on the scope of employment and the Westfall Act certification if there are questions. I do want to just briefly comment, Judge Newsom. We agree with you that we don't think that there really is a circuit split on this and that to the extent that there might be some language in the Third Circuit and the D.C. Circuit that suggests that a plaintiff gets discovery whenever the allegations in a complaint would show conduct outside the scope of employment. And we don't think that those cases actually hold that. And indeed, if they did hold that, it would be very odd holding because it would mean that it's easier to get discovery in a Westfall Act case than it would be in a typical summary judgment case. So at a minimum, we think that a plaintiff who wants discovery in a Westfall Act case has to at minimum meet the Rule 56D standard and show with specificity what discovery they want to take and explain why it's relevant to the scope of employment inquiry. Otherwise, I'd be happy to answer any questions about the individual state law claims and why they fail to meet 9B pleading standards, as well as the civil RICO claims. But if the court has no further questions on that, then we would rest on our briefs. Okay. Hearing none, Mr. Schultz, thank you very much. Mr. Olympier, you have your five minutes of rebuttal. Yes, Your Honors. Speaking briefly on the arguments related to Rule 9, the plaintiff's complaint is required to state with specificity the elements of fraud. Specifically, precisely what statements were made and what documentation or representations or what omissions were made. They have to state particularly the time and place of such statements and the person responsible for making them, the content of the statements and the manner in which they misled the plaintiff and what the defendants obtained as a consequence of the fraud. And I think the allegations in the complaint specifically state all of those. It specifically states that there is a May 3rd specification of work and a June 26th, I believe it is a cooperation agreement that was sent by email to the plaintiffs in this case, Omnipol, that stated that they would be paid upon receipt of the arms and armor that was requested in the SOCOM BOA that was at question, or was at issue. Mr. Olympier, your clients are not harmed in any way by the transaction being assigned to Purple Shovel. What they are harmed by, as I read your complaint, is the alleged diversion of the money at the back end. And as to that diversion, how does the complaint satisfy Rule 9? Yes, Your Honor. And the issue, Your Honor, is that obviously had Purple Shovel not been promised that they would be paid when the defendants had no intention of doing so, they would not have entered into the contract. That's the reliance on the debt. Wait, wait, wait. I thought the complaint alleged that Purple Shovel was paid and then the money was diverted and not given to Omnipol and to Elmix. Correct, Your Honor. And I may not be understanding your question. The issue that we've alleged is that they induced the plaintiff, Omnipol, into a contract fully intending that they would receive the arms and armor from Omnipol to induce SOCOM through DFAS to issue the funds to Purple Shovel that are intended for Omnipol, knowing that they were going to divert those funds away from Omnipol and into their own personal use. Right. No, I understand that. So my question is, as to the diversion, how does the complaint satisfy Rule 9? As to the diversion itself, Your Honor, we have identified the course the funds took and where they went. We are unable to identify, or were unable to identify the dates DFAS issued the transfer to Purple Shovel or the dates and locations from Purple Shovel to the individual defendants for a very specific reason. The plaintiff sought the information from DFAS through FOIA requests on when these transfers took place and DFAS resisted that. I apologize, Judge Choflat, I believe you are muted. Judge Choflat, you're on mute. How's that? There you go. Okay. You just talked about fraud and the inducement. Is your argument that your clients were fraudulently induced into entering into the agreement with Purple Shovel? In part, yes, Your Honor. No, no, no, not in part. If that's your argument, under Florida law, you have two options. One, you could move to rescind the agreement upon discovery of the fraud, in which event you would tender back to Purple Shovel whatever consideration you received. Or the other, you would stand on the agreement. So you didn't move to rescind and there's been no offer of rescission in this case, so that's out of the question. So under Florida law, you're standing on the bargain, and the bargain was that Purple Shovel would pay you the contract price. Is that right? Again, Your Honor. We're going to squeeze this case down to bare bones. You had a contract your clients did with Purple Shovel. Yes, Your Honor. All right. And Purple Shovel promised to pay you for your performance. Specifically, Your Honor, it was not Purple Shovel. It was actually... Who did you have the contract with? Of course, Your Honor, and that's where we get into... No, no, no, no, no, no. There's no contract attached to the complaint. So as I read the complaint, you do allege an agreement with Purple Shovel. There was a contract at the end of the day with Purple Shovel. All right. You filed claims of bankruptcy, did you not? We did, Your Honor. Okay, based on a contract. Correct, Your Honor. Okay, and you weren't paid by Purple Shovel. No, Your Honor. Okay, so some government employees, contracting officers, and a couple of principals of Purple Shovel made off with the payment that the government made to Purple Shovel. Correct, Your Honor. Okay. Now, where is the fraud and any inducement in this case? Of course, Your Honor. Where is it? You have some people who took money that belonged to Purple Shovel. So Purple Shovel would be the one that had the claim that its employees took money that it was supposed to pay to your clients. Yes, Your Honor. Purple Shovel, you agree with me, that Purple Shovel would have the very claim we're talking about here. No, Your Honor, I disagree with that claim. Oh, yes. Wait a minute. I'm a corporation, and I have an employee, and the employee is supposed to give money in the course of his employment to your client. And the employee doesn't do that. He's embezzled my money, has he not? If that money, Your Honor, had come from someone else. And the money belonged to Purple Shovel when it was received from the government. Will you agree with that? No, Your Honor. It didn't belong to Purple Shovel. Why didn't it belong to Purple Shovel? Because it was paying it to Purple Shovel on behalf of the subcontractor who actually confirmed it. No, no, no. It went to Purple Shovel. There's no allegation in this complaint, as I understand it, that your clients were entitled to the money from the government and that Purple Shovel wasn't involved. No, Your Honor, they were not directly to pay. The money went to Purple Shovel because it had a contract with the government. You agree with me? Yes, Your Honor. Okay. And it, in turn, had a contract with your clients, and your clients were owed some money. Correct, Your Honor. And they were not paid. Correct, Your Honor. And they were not paid because, squeezing this case down, some Purple Shovel employees embezzled the money from Purple Shovel. Will you agree? I believe there's more facts than that, Your Honor. No, no. To that point, yes. Take my facts. That would just be an embezzlement from Purple Shovel, wouldn't it? To the extent of those facts, yes, Your Honor. Okay. And those employees gave the contracting officers some of the money that they took from Purple Shovel. Correct, Your Honor. The contracting officers didn't receive anything except from the Purple Shovel employees who embezzled the money. Is that right? Yes, Your Honor. All right. So I don't, speaking for myself, I fail to understand, under Florida law, any fraud in the inducement claim here, spelled out in the complaint, in which you seek no rescission, but you stand on the bargain. As best I can see for your fraud claim is that Purple Shovel never intended to pay you the money. Purple Shovel never intended. That means the officers of Purple Shovel never intended to pay you. Yes, Your Honor. The allegations are that they specifically negotiated the money. Yeah. So Purple Shovel fraudulently induced you to enter into a contract with it, knowing it would never pay. That's it. Yes, Your Honor. That is the start of the current one, yes. But you stood on the bargain, which means you look to Purple Shovel for payment. Again, Your Honor, we allege that there was a fraud below that, but yes, Your Honor. Okay. I understand. Thank you. And my time is up so if there are no further questions. Thank you very much for your. I'm sorry, Judge Newsom, you were muted. Bear with me. Judge Jordan, do you have any further questions? I don't. Thank you very much. Okay, Mr. LaPierre, thank you very much. Sorry for the technical snafu today, guys. Thank everyone for your fine arguments and we'll submit this case and we'll be in recess until tomorrow morning at 9am Eastern. Thank you very much, Your Honor. Thank you, Your Honor. Thank you.